1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
9                               AT TACOMA

10   KAYLA R. MATHENEY,                    CASE NO. 11CV5239-RBL-JRC

11                   Plaintiff,            REPORT AND
                                           RECOMMENDATION ON
12        v.                               PLAINTIFF'S COMPLAINT

13   MICHAEL J. ASTRUE, Commissioner       NOTING DATE: MARCH 23, 2012
     of the Social Security Administration,
14
                     Defendant.
15

16

17        This matter has been referred to United States Magistrate Judge J. Richard

18   Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19   4(a)(4), and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261,

20   271-72 (1976).  This matter has been fully briefed. (<u>See</u> ECF Nos. 14, 16, 17).

21        The ALJ failed to provide clear and convincing reasons to discount plaintiff's

22   credibility and failed to evaluate properly the medical evidence as well as the lay

23

24

evidence. Therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

## BACKGROUND

Plaintiff, KAYLA R. MATHENEY, was born in 1986 and was eighteen-years old on her alleged disability onset date of July 1, 2005 (Tr. 133). Plaintiff's last job at the time of her hearing was working for Job Corps for three months (Tr. 15). She was training to be a medical assistant (id.). Plaintiff testified that she was medically discharged from this job when she had two fainting spells (id.). She testified that prior to this job she was unemployed "for a very long time" (Tr. 16).

## PROCEDURAL HISTORY

Plaintiff filed applications for Social Security benefits in April, 2007 (Tr. 64,133-46). Her applications were denied initially and following reconsideration (Tr. 55-60, 78-81, 88-94). Plaintiff's requested hearing was held before Administrative Law Judge Gary Suttles ("the ALJ") on October 5, 2009 (Tr.10 -54). On October 28, 2009, the ALJ issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 61-77).

On January 22, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-4). See 20 C.F.R. § 404.981. In March, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (see ECF Nos. 1, 3). On July 20, 2011, defendant filed the sealed administrative transcript regarding this matter ("Tr.") (see ECF No. 9). In her Opening Brief, plaintiff questions the ALJ's review of:

(1) plaintiff's testimony; (2) the medical evidence; (3) the lay evidence; and (4) plaintiff's residual functional capacity (see ECF No. 16, pp. 1-2). She also questions the ALJ's finding that other work existed in significant numbers in the national economy that plaintiff could perform and the Appeal's Council's denial of plaintiff's request for review considering the new evidence (id.).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin.*,* 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." Stout, supra, 454 F.3d at 1054 (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). In

the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. Stout, supra, 454 F.3d at 1054-55 (reviewing legal errors found to be harmless).

## DISCUSSION

1.  The ALJ erred in his review of plaintiff's credibility.

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, supra, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, supra, 80 F.3d at 1283-84; Reddick, supra, 157 F.3d at 722 (*citing* Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996); Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

a.  Conservative treatment and lack of treatment

In this matter, the ALJ found that plaintiff's medically determinable impairments reasonably could have been expected to cause plaintiff's alleged symptoms, but found

that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 70).

Defendant contends that the ALJ relied on plaintiff's conservative treatment, noting plaintiff's only medication of ibuprofen, when discounting plaintiff's testimony. However, the ALJ relied on this factor when discussing plaintiff's physical impairments, specifically asthma (see Tr. 71) and the ALJ was aware of and subsequently noted plaintiff's prescription for Celexa for her mental impairments (see Tr. 72). In the context of plaintiff's credibility, when discussing plaintiff's mental impairments, the ALJ noted that "the record contains no evidence of treatment, from a mental health perspective, during the period from October 2003 to September 2007" (id.).

Although it is not clear to what extent the ALJ relied on this period of lack of treatment to fail to credit fully plaintiff's testimony, the ALJ mentioned it explicitly in the context of factors considered when making his finding on credibility (see Tr. 73). In the context of this case, such reliance without discussion of potential reasons underlying the lack of treatment was not appropriate, as discussed further below.

Although it often is the case that a claimant's failure to comply with prescribed treatment calls into question the severity of the claimant's symptoms, this generally is because such failure suggests that the claimant willfully is failing to submit to medical treatment because he or she wishes to remain disabled and receive benefits, or because he or she is not suffering from that severe of an impairment if not doing everything possible to remedy it. See 20 C.F.R. § 404.1530 ("If you do not follow the prescribed treatment

without a good reason, we will not find you disabled"); see also SSR 96-7 1996 SSR

LEXIS 4, at *21-*22 ("the individual's statements may be less credible if the level or

frequency of treatment is inconsistent with the level of complaints . . . . and there are

no good reasons for this failure"); but see Nichols v. Califano, 556 F.2d 931, 932 (9th

Cir. 1977) (even if a condition could be remedied by surgery, if the claimant's "actions

were reasonable under the circumstances, then the district court's judgment upholding the

[written decision by the ALJ] must be reversed"). However, a good reason can provide a

valid excuse for not following prescribed treatment, such as that a treating family

physician does not recommend the treatment, or that it is excessively painful or

dangerous. 20 C.F.R. § 404.1530; SSR 96-7 1996 SSR LEXIS 4, at *21-*22; Nichols,

supra, 556 F.2d at 933.

When a mental illness is involved, assuming that a failure to comply with

prescribed treatment suggests a *willful* failure to comply with prescribed treatment can be

illogical. This is in part because a person suffering from a mental illness may not realize

that she needs her medication, or she may not realize even that her "condition reflects a

potentially serious mental illness." Van Nguyen, supra, 100 F.3d at 1465. "'[I]t is a

questionable practice to chastise one with a mental impairment for the exercise of poor

judgment in seeking rehabilitation.'" Id. (*quoting* with approval, Blankenship v. Bowen,

874 F.2d 1116, 1124 (6th Cir. 1989)). Here, the ALJ found that plaintiff suffered from the

severe mental impairments of depression, anxiety-related disorders and an attention

deficit hyperactivity disorder (Tr. 67). In addition, in this matter, plaintiff's treatment

record indicates that she subjectively felt anxious around more than a couple of people

(Tr. 476), and Dr. Jennifer Cheng-Shannon, M.D. ("Dr. Cheng-Shannon") opined that plaintiff likely would "have difficulty maintaining regular attendance in the workplace secondary to her described agoraphobia" (Tr. 450-51).

When a person suffers from a mental illness, especially severe ones such as the severe depression and anxiety-related disorders suffered by plaintiff here, (see Tr. 67), and the mentally ill person does not have the requisite insight into her condition to seek mental health treatment, or is too afraid to go out when her anxiety is at a heightened state, this fact actually can indicate a greater severity of mental incapacity. See Van Nguyen, supra, 100 F.3d at 1465; see also Blankenship, supra, 874 F.2d at 1124.

In addition, according to Social Security Ruling, (hereinafter "SSR"), SSR 96-7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7, 1996 SSR LEXIS 4, at *21-*22. Here, the record contains information suggesting that plaintiff suffered from depression and that additionally, when suffering from symptoms of her anxiety disorder, she had difficulty leaving the house (see, e.g., Tr. 450-51). The ALJ should have considered these factors before drawing negative inferences about plaintiff's credibility due to a time period without mental health treatment. See SSR 96-7, 1996 SSR LEXIS 4, at *21-*22.  His failure to do so is legal error.  See id.

b.  Alleged inconsistent statements

Defendant argues that the ALJ found that plaintiff made inconsistent statements when considering plaintiff's asthma (see Response, ECF No. 16, pp. 6-7). However, the ALJ did not indicate that he found inconsistent statements from plaintiff.  Instead, the ALJ found that "while the record reflects a diagnosis of asthma, there is no evidence that the claimant has been hospitalized or even sought emergency room treatment for symptoms associated with this condition" (Tr. 71). The ALJ also noted that when plaintiff did seek treatment for difficulty breathing, she reported that she had not used her inhaler since childhood (id.). Although the ALJ discussed the lack of treatment as a consideration in this context, the ALJ did not find that plaintiff had made any inconsistent statements. The factor of inconsistent statements provides little support for the ALJ's adverse credibility finding.

c.  Plaintiff's activities of daily living

Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities  . . . .  does not in any way detract from her credibility as to her overall disability." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007 (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination:" (1) whether or not they contradict the claimant's other testimony; and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." Orn, supra, 495 F.3d at 639 (citing Fair, supra, 885 F.2d at 603).

Here, some of plaintiff's activities of daily living were work activities and were considered properly by the ALJ when assessing plaintiff's credibility (see Tr. 73). See also Orn, supra, 495 F.3d at 639. Regarding plaintiff's other activities of daily living, the ALJ did not find any specific contradiction between plaintiff's activities of daily living and any specific testimony of plaintiff. Instead, the ALJ found that plaintiff's activities in general were "inconsistent with her allegations of ongoing and disabling symptoms" (Tr. 73). This general finding does not support the ALJ's failure to credit fully plaintiff's testimony. See Orn, supra, 495 F.3d at 639.

The ALJ cites the fact that plaintiff could do some household chores; take care of personal hygiene; prepare simple meals; shop; attend church; visit her family regularly; read; socialize via email; attend an art class twice a week; and, travel to Seattle to visit with family and friends (see Tr. 73). The ALJ relied on these daily activities to discount plaintiff's credibility, as well as to diminish the weight he gave to examining doctors (see Tr. 74), see also infra, section 2. However, the ALJ did not make a specific finding that any of these activities were transferable to a work setting and did not cite a single contradiction between these activities and plaintiff's other testimony, committing legal error. See Orn, supra, 495 F.3d at 639.

d. Objective medical evidence

The ALJ found that the medical record failed to support plaintiff's allegations (see Tr. 73). However, the ALJ fails to credit all of the observations and mental status examination results gleaned by doctors during multiple evaluations of plaintiff. Here, Drs. Trowbridge, Neims and Cheng-Shannon all conducted mental status examinations of

plaintiff and gathered objective evidence about plaintiff's limitations and her abilities during their examinations of her, although the ALJ failed to credit fully their opinions (see Tr. 73-74, 398-412, 448-51, 521-33).

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." Id. at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, supra, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (id. at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996).

Here, Drs. Trowbridge, Neims and Cheng-Shannon all conducted mental status examinations of plaintiff, gathered objective evidence about plaintiff's limitations and her abilities, and opined regarding her various functional limitations (see Tr. 73-74, 398-412, 448-51, 521-33). In addition, as the majority of the most severe limitations opined by the examining doctors were in the realm of social limitations, normal examination results on the cognitive portions of the mental status examination are not very relevant regarding these opined limitations (see Tr. 399, 400, 450-51, 525).

For the reasons discussed and based on the relevant record, the Court finds that the ALJ's general finding that the medical record, "fails to support the claimant's allegations of ongoing and disabling symptoms" provides little support for the ALJ's failure to credit fully plaintiff's testimony. See Trzepacz, supra, The Psychiatric Mental Status Examination 3; cf. Blankenship, supra, 874 F.2d at 1121 ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (quoting Poulin v. Bowen, 817 F.2d 865, 873074 (D.C. Cir. 1987)).

For the reasons discussed, and based on the relevant record, the Court concludes that the ALJ failed to provide clear and convincing reasons for his failure to credit fully plaintiff's testimony regarding her symptoms and limitations on her ability to work. See Smolen, supra, 80 F.3d at 1283-84.

2. <u>The ALJ erred in his review of the medical evidence</u>.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996) (*citing* <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991); <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Lester</u>, <u>supra</u>, 81 F.3d at 830-31 (*citing* <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Reddick</u>, <u>supra</u>, 157 F.3d at 725 (*citing* <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. <u>Reddick</u>, <u>supra</u>, 157 F.3d at 725 (*citing* <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id</u>. (*quoting* <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3d Cir. 1981)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, <u>supra</u>, 81 F.3d at 830 (citations omitted); <u>see also</u> 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion

by an examining physician or psychologist. <u>Lester</u>, <u>supra</u>, 81 F.3d at 831 (citations

omitted). However, "it may constitute substantial evidence when it is consistent with

other independent evidence in the record." <u>Tonapetyan</u>, <u>supra</u>, 242 F.3d at 1149 (*citing*

<u>Magallanes</u>, <u>supra</u>, 881 F.2d at 752). "In order to discount the opinion of an examining

physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set

forth specific, *legitimate* reasons that are supported by substantial evidence in the

record." <u>Van</u> <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* <u>Lester</u>,

<u>supra</u>, 81 F.3d at 831); <u>see also</u> 20 C.F.R. § 404.1527(d)(2)(i) (when considering medical

opinion evidence, the Commissioner will consider the length and extent of the treatment

relationship).

According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity

assessment by the ALJ "must always consider and address medical source opinions. If

the RFC assessment conflicts with an opinion from a medical source, the adjudicator

must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20.

Plaintiff argues that the ALJ failed to consider properly medical source evidence

from Drs. Trowbridge, Neims, and Cheng-Shannon. Defendant responds in part that the

ALJ relied on the opinion by the State agency medical consultant when failing to credit

fully the medical source opinion evidence from Drs. Trowbridge, Neims and Cheng-

Shannon. Nevertheless, in order to do so, an ALJ must provide "specific and legitimate

reasons that are supported by substantial evidence in the record." <u>See</u> <u>Lester</u>, <u>supra</u>, 81

F.3d at 830-31.

a.  Dr. Brett Trowbridge , Ph.D. ("Dr. Trowbridge")

The ALJ failed to credit fully the opinions of examining doctor, Dr. Trowbridge

(Tr. 73-74). He included the following discussion regarding Dr. Trowbridge's opinion:

> As for the opinion evidence, the undersigned is cognizant that Brett
> Trowbridge, Ph.D., completed an assessment in April 2007 indicating
> that the claimant had marked limitations in her ability to relate
> appropriately to coworkers and supervisors, interact appropriately in
> public contacts, respond appropriately to and tolerate the pressures and
> expectation of a normal work setting, and control physical or motor
> movements and maintain appropriate behavior. The doctor opined that
> the claimant [had] moderate limitations in her ability to care for self
> including personal hygiene and appearance, and mild-to-moderate
> limitation in her ability to learn new tasks (internal citation to Exhibit
> 4F, p. 3; Exhibit 10F, p. 3). The record, however contains no evidence
> that Dr. Trowbridge has ever treated the claimant. According to forms,
> the evaluation was performed solely to determine the claimant's
> eligibility for public assistance (internal citation to exhibit 4F, p. 1;
> Exhibit 10F, p. 1). Moreover, the limitations set forth in the assessment
> are inconsistent with the objective findings noted during the mini-mental
> status evaluation. Specifically, during the evaluation, Dr. Trowbridge
> reported that the claimant scored the maximum of 30 points and
> displayed no deficits in respect to orientation, registration, attention and
> calculation, repetition or comprehension (internal citation to Exhibit 4F,
> pp. 5, 6; Exhibit 10F, pp. 5, 6). The assessment is also inconsistent with
> the actual daily mental activities the claimant performs. I give it little
> weight.

(id.).

First, the fact that Dr. Trowbridge did not treat plaintiff only indicates that his

opinion should be evaluated as one by an examining doctor as opposed to an opinion

from a treating doctor (see Tr. 73). This is not a reason to fail to credit his opinion in the

absence of a contradictory opinion from a treating source.

Second, the ALJ found that the limitations set forth by Dr. Trowbridge were

"inconsistent with objective findings noted during the mini-mental status examination"

(Tr. 73). The ALJ supported this finding by citing results from tests of plaintiff's cognitive abilities, such as attention, calculation and comprehension (see Tr. 73-74 (*citing* Tr. 402-03, 456-57)). However, a review of the record shows that Dr. Trowbridge relied on plaintiff's limitations in social areas of functioning, as opposed to cognitive areas of functioning, in order to support his assessment regarding plaintiff's abilities and most severe limitations (see Tr. 400, 454). Whether or not plaintiff had difficulties with attention, calculation and comprehension is not dispositive regarding the question of whether or not plaintiff had limitations in her ability to relate appropriately with co-workers and supervisors; interact appropriately in public contacts; respond appropriately to and tolerate the pressures and expectation of a normal work setting; care for self; and control physical or motor movements and maintain appropriate behavior (see Tr. 400, 454). Therefore, the Court finds that the ALJ's finding that the limitations set forth by Dr. Trowbridge were "inconsistent with objective findings noted during the mini-mental status examination" is not supported by substantial evidence in the record as a whole (Tr. 73; see also Tr. 400, 454).

The ALJ also failed to credit fully Dr. Trowbridge's opinion based on a finding that Dr. Trowbridge's assessment was inconsistent with plaintiff's daily mental activities (Tr. 74). However, as this finding is very general, the Court is unable to evaluate whether or not it is supported by substantial evidence in the record as a whole. The Court already has discussed the noted daily activities of plaintiff, and Dr. Trowbridge's opinions regarding plaintiff's limitations do not appear to be inconsistent with them, as discussed further below.

1    For example, the ALJ noted that Dr. Trowbridge opined that plaintiff was

2    impaired moderately in her ability to care for self, including personal hygiene and

3    appearance (Tr. 74 (*citing* Tr. 400), perhaps implying that this opinion was inconsistent

4    with plaintiff's reported ability to take care of her personal needs (Tr. 69). However, the

5    record demonstrates that Dr. Trowbridge specifically indicated that he opined moderate

6    limitation in this area due to plaintiff's obesity (see Tr. 400, 454 (i.e., Exhibits 4F and

7    10F, p. 3). Therefore, if this is the inconsistency on which the ALJ relied, it provides little

8    support for the ALJ's failure to credit fully Dr. Trowbridge's opinion. The ALJ has not

9    specified any particular inconsistency, thereby failing to give "specific and legitimate

10   reasons that are supported by substantial evidence in the record" for his failure to fail to

11   credit fully Dr. Trowbridge's opinion. See Lester, supra, 81 F.3d at 830-31.

12

13         b.  Dr. Dan Neims, Psy.D. ("Dr. Neims")

14         The ALJ failed to credit fully the opinion by Dr. Neims in part with the same

15   reasoning utilized in support of his failure to credit fully the opinion by Dr. Trowbridge

16   (see Tr. 73-74). The ALJ found that Dr. Neims' assessment was "inconsistent with the

17   objective findings noted during the mental status evaluation, as discussed in detail above"

18   (Tr. 74). However, the ALJ again appears to be relying on normal results on cognitive

19   tests to discount Dr. Neims' opinion regarding plaintiff's social limitations, as discussed

20   above, see supra, section 2.a. If the ALJ intended to rely on this factor in some other

21   manner, he failed to provide sufficient specificity in order to do so. See Lester, supra, 81

22   F.3d at 830-31.

23

24

The ALJ also relied on the other reason utilized to discount the opinion of Dr. Trowbridge in order to fail to credit fully Dr. Neims' opinion, finding that his assessment was inconsistent with "the rather extensive daily mental activities of the claimant" (see Tr. 74). However, again, as this finding is very general, the Court is unable to evaluate whether or not it is supported by substantial evidence in the record as a whole. The ALJ erred by failing to provide any specificity regarding what aspect of Dr. Neims' assessment is inconsistent with which particular mental activity of plaintiff (see id.). See also Lester, supra, 81 F.3d at 830-31.

For the reasons discussed and based on the relevant record, the Court concludes that the ALJ failed to give "specific and legitimate reasons that are supported by substantial evidence in the record" for his failure to credit fully Dr. Neims' opinion. See Lester, supra, 81 F.3d at 830-31.

c. Dr. Cheng-Shannon

The ALJ gave "some weight" to the opinion by Dr. Cheng-Shannon (see Tr. 74). However, the ALJ found that there was "no objective evidence to support her conclusion regarding the claimant's ability to maintain regular attendance" and found that Dr. Cheng-Shannon based this opinion on plaintiff's subjective statements (see Tr. 74 (citing Tr. 9F, p. 7, i.e., Tr. 451)). Although Dr. Cheng-Shannon relied on plaintiff's description of her symptoms in order to find that she may have difficulty maintaining regular attendance, the Court has found that the ALJ has not provided clear and convincing reasons to fail to credit fully plaintiff's testimony, see supra, section 1. Therefore, a reliance on plaintiff's subjective accounts of her symptoms is not a sufficient reason to

discount this opined limitation by Dr. Cheng-Shannon in this instance. See <u>Blankenship</u>, <u>supra</u>, 874 F.2d at 1121 ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting* <u>Poulin v. Bowen</u>, 817 F.2d 865, 873074 (D.C. Cir. 1987)). The ALJ failed to provide any other reason in support of his failure to credit fully the medical opinion of Dr. Cheng-Shannon. For this reason and based on the relevant record, the Court concludes that the ALJ failed to provide "specific and legitimate reasons that are supported by substantial evidence in the record" for his failure to fail to credit fully Dr. Cheng-Shannon's opinion. See <u>Lester</u>, <u>supra</u>, 81 F.3d at 830-31.

3.   <u>The ALJ erred in his review of the lay evidence.</u>

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," <u>see</u> 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," <u>see</u> 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse practitioners and naturopaths, who are considered other medical sources, <u>see</u> 20 C.F.R. § 404.1513 (d)(1). <u>See also</u> <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)). An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." <u>Turner</u>, <u>supra</u>, 613 F.3d at 1224 (*citing* <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th

Cir. 2001)); see also Van Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

Recently, the Ninth Circuit characterized lay witness testimony as "competent evidence," again concluding that in order for such evidence to be disregarded, "the ALJ must provide 'reasons that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Van Nguyen, supra, 100 F.3d at 1467). In this recent Ninth Circuit case, the court noted that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." Bruce, supra, 557 F.3d at 1116 (citing Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996)).

Testimony from "other non-medical sources," such as friends and family members, see 20 C.F.R. § 404.1513 (d)(4), may not be disregarded simply because of their relationship to the claimant or because of any potential financial interest in the claimant's disability benefits. Valentine v. Comm'r SSA, 574 F.3d 685, 694 (9th Cir. 2009). In addition, according to the Ninth Circuit, absent "evidence that a specific [lay witness] exaggerated a claimant's symptoms *in order* to get access to his disability benefits," an ALJ may not reject that witnesses' testimony with a general finding that the witness is "an 'interested party' in the abstract." Id.

Here, the ALJ failed to mention the lay evidence provided by Ms. Marjenna L. Gittings ("Ms. Gittings"), plaintiff's friend/minister (see Tr. 196). Ms. Gittings indicated

that plaintiff "has had problems pulling out her hair until she was about bald," further indicating that plaintiff became "stressed and afraid on public transportation" (Tr. 199). Ms. Gittings also indicated that plaintiff did not "go out alone and often won't go even if someone will go with her" (Tr. 200). Ms. Gittings opined that plaintiff "has had repeated periods of depression and pulling out her hair," and indicated that plaintiff sometimes became suicidal (Tr. 201).

The ALJ erred by failing to discuss the opinion evidence provided by Ms. Gittings. See Bruce, supra, 557 F.3d at 1115. Defendant argues that the error was harmless. However, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, supra, 454 F.3d at 1056 (reviewing cases). As the Court cannot so conclude with confidence, the lay evidence should be evaluated following remand of this matter. See id.

4. Plaintiff's residual functional capacity.

Plaintiff also complains about the ALJ's determination regarding her residual functional capacity and other subsequent findings in the five-step sequential disability evaluation process. Based on the relevant record and the reasons discussed, the Court concludes that all of the five steps of the sequential disability evaluation process should be evaluated anew following remand of this matter.

5. This matter should be reversed and remanded to the Commissioner for further administrative proceedings.

The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." Harman v. Apfel, 211 F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (*quoting* Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. See Smolen, 80 F.3d at 1292. In addition, the record is not conclusive. The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate to allow the Commissioner the opportunity to consider properly all of the lay and medical evidence as a whole and to incorporate the properly considered lay and medical evidence into the consideration of plaintiff's credibility and residual functional capacity. See Sample, supra, 694 F.2d at 642.

Remanding the matter also will allow the Commissioner the opportunity not only to reconsider the five steps of the sequential disability evaluation process, but also to consider fully the new evidence plaintiff submitted to the Appeals Council (see Tr. 4, 599-627).

CONCLUSION

The ALJ failed to provide clear and convincing reasons to discount plaintiff's credibility and failed to evaluate properly the medical evidence as well as the lay evidence.

Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on March 23, 2012, as noted in the caption.

Dated this 29th day of February, 2012

J. Richard Creatura
United States Magistrate Judge